IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Donna Moyle Page *Individually and as Personal Representative of the Estate of Arthur Curtis Page, II,*<br><br>Plaintiff,<br><br>v.<br><br>Aiken County; Aiken County Sheriff's Office; Michael E. Hunt *Individually and in his Official Capacity as Aiken County Sheriff*; Christopher Owens *Individually and in his Official Capacity as Deputy of Aiken County Sheriff's Office/Aiken County*, Clay Killian *Individually and in his Official Capacity as County Administrator for Aiken County*, John Does,<br><br>Defendants. | C/A No.: 1:23-cv-04757-MGL-SVH<br><br>**MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS AIKEN COUNTY, AIKEN COUNTY SHERIFF'S OFFICE, MICHAEL E. HUNT, CHRISTOPHER OWENS, AND CLAY KILLIAN** |

Defendants Aiken County, Aiken County Sheriff's Office, Michael E. Hunt, Christopher Owens, and Clay Killian ("Defendants"), by and through their undersigned counsel, hereby move for an Order, pursuant to Rule 56, Fed. R. Civ. P., granting summary judgment in their favor as to all claims asserted in the Complaint (ECF No. 1-2).

## INTRODUCTION

Defendant Christopher Owens, acting in his capacity as a law enforcement officer with the Aiken County Sheriff's Office, shot and killed Arthur Page ("Page") on May 21, 2022. The instant action was filed on July 21, 2023, in the Aiken County Court of Common Pleas and thereafter removed to this Court. After he was deposed, Defendant Owens filed a Motion for Summary Judgment (ECF No. 24) (the "Initial Motion") raising only the defense of qualified immunity as to the Fourth Amendment claims asserted against him. After briefing on that motion, the Magistrate Judge issued a Report and Recommendation (ECF No. 39) (the

1

"Report") in which she recommended that the District Judge grant the Motion for Summary Judgment. The District Court has not yet ruled on the Report.

Since the Initial Motion and the Report addressed only the subject of qualified immunity as to Defendant Owens—and no other defendant or defense—the Defendants file the instant motion in order to address the remaining claims and defenses. As set forth more fully below, Defendants respectfully submit that summary judgment should be granted as to all claims asserted against them.

## FACTUAL BACKGROUND

Since the Initial Motion has already fully set forth the factual background, along with supporting documentary and video evidence, and because the Report has already thoroughly discussed the factual background, Defendants do not set forth any factual recitation herein. Instead, Defendants refer to and incorporate herein by reference the factual discussion and exhibits from Defendant Owens' Motion for Summary Judgment (ECF No. 24-1, pp. 2-4), Defendant Owens' Reply (ECF No. 36, pp. 2-5), and the Report (ECF No. 39, pp. 2-9).

## DISCUSSION

**Proper Parties**

In order to streamline the following discussion, the proper parties (and capacities) for each of the various claims must be ascertained. First, Aiken County (the "County") and Clay Killian (the former Aiken County Administrator) are not proper parties to this action.

The County is not a proper party to this action because it did not employ Defendant Owens and because, in South Carolina, sheriffs and deputy sheriffs are state rather than county officials. There have been a number of cases, both state and federal, to address this issue. The most cited of the cases is *Cone v. Nettles*, 417 S.E.2d 523 (S.C. 1992), wherein the South Carolina Supreme Court held that a deputy sheriff in South Carolina is a state rather

2

than a county employee. *See also Lampley v. Hulon*, 854 S.E.2d 489, 491 (S.C. Ct. App. 2021) ("However, our supreme court held it is well-settled under South Carolina law that the Sheriff and Sheriff's deputies are state, not county, employees."); *Edwards v. Lexington County Sheriff's Department*, 688 S.E.2d 125, 127 n.1 (S.C. 2010) ("However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."). Likewise, the United States District Court has held that "the sheriff and the county are distinct and separate entities in South Carolina." *Patel v. McIntyre*, 667 F. Supp. 1131, 1146 n.26 (D.S.C. 1987). *See also Gulledge v. Smart*, 691 F. Supp. 947 (D.S.C. 1988); *Allen v. Fid. & Deposit Co. of Maryland*, 515 F. Supp. 1185, 1190 (D.S.C. 1981) (noting, in a case involving Aiken County as a defendant and allegations of excessive force against a deputy of the Aiken County Sheriff, that it "has long been clear that the County has no authority over the Sheriff or his deputies as to matters of hiring, firing, training, discipline or the manner in which the duties of the office are carried out" and holding that Aiken County was therefore not a proper party). Therefore, the County is not a proper party to an action involving the acts of a sheriff's deputy. Nor would Clay Killian, who was the former Aiken County Administrator, have any role in the present case.[1]

As to the Defendant ACSO, there is no such legal entity. Rather, this is merely a colloquial name used to refer to the Sheriff of Aiken County and his employees and deputies. Because ACSO is not a separate legal entity and because referring to the ACSO is essentially indistinguishable from referring to Defendant Sheriff Michael Hunt in his official capacity, these two defendants will be referred to collectively as Defendant Hunt in his official capacity. It is also unnecessary to separately address any allegations against Defendant Owens in his official capacity, as this is merely another way of addressing allegations toward the entity for

---

[1] Plaintiff has not adduced evidence of any involvement by this defendant.

which he was acting. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (internal citation omitted).

As to the state law claims, the only proper party is Defendant Hunt in his official capacity. The South Carolina Tort Claims Act is the exclusive remedy for any tort committed by an employee of a governmental entity. S.C. Code Ann. § 15-78-70(a). Further, the Act provides that the only proper party in such an action is the agency or political subdivision for which the employee was acting. § 15-78-70(c). Therefore, the proper party for any state law claim is Defendant Hunt in his official capacity.

Based on the above, the only party-defendants and capacities that will be discussed herein are Defendant Owens in his individual capacity (for the federal claims), Defendant Hunt in his individual capacity (for the federal claims), and Defendant Hunt in his official capacity (for any state law claims). All other entities and defendants should be dismissed.

## I.     FOURTH AMENDMENT CLAIMS

As to Plaintiff's first and second causes of action, which purport to split a single Fourth Amendment claim for excessive force into two separate claims, Defendant Owens hereby refers to and incorporates by reference his previous arguments in favor of summary judgment (ECF Nos. 24 & 36). As set forth in those filings, and as evaluated in the Report, Defendant Owens acted in an objectively reasonable manner because a reasonable officer in his position would have had probable cause to believe that Page posed a threat of serious physical harm, either to the officer or to others. Defendants therefore submit that the referenced filings should dispose of any Fourth Amendment claims against them.

Defendants recognize that the Initial Motion and Report dealt only with qualified immunity, which has two prongs, only one of which deals with the merits of the Fourth Amendment claim. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194 (2001) (the first prong of qualified

4

immunity considers whether "the facts alleged show the officer's conduct violated a constitutional right"); *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (the second prong of qualified immunity considers "whether, at the time of the violation, the constitutional right was clearly established, that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). To the extent the Report was intended as a recommendation only as to the second prong of qualified immunity, Defendants submit that the same analysis and conclusions can and should dispose of the Fourth Amendment claims on the merits.

The first and second causes of action in the Complaint appear to assert Fourth Amendment claims against only Defendant Owens. To the extent these causes of action were intended to reach any other defendant, summary judgment should be granted. The Supreme Court has held that "masters do not answer for the torts of their servants" under §1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The Court also noted that mere "knowledge and acquiescence" in the misconduct of subordinates is insufficient to establish supervisory liability. *Id.* On the contrary, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* Stated differently, Plaintiff is required to "plead [and prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. As described by the Fourth Circuit, this requirement is "designed to ensure that the serious burdens of defending against this sort of lawsuit are visited upon a departmental supervisor only when the complaint plausibly suggests that the supervisor engaged in his or her own misconduct." *Evans v. Chalmers*, 703 F.3d 636, 661 (4th Cir. 2012) (Wilkinson, J., concurring) (internal alterations and quotation marks omitted). Even if the Complaint could charitably be read to include any allegations of misconduct on the part of Defendant Hunt, such a claim would fail where there was no predicate constitutional violation by Defendant Owens. *See id.* at 654 (noting that "supervisors and

5

municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages.") (internal alterations omitted).

Therefore, summary judgment should be granted as to all Fourth Amendment claims.

## II.     FOURTEENTH AMENDMENT CLAIMS

In addition to the Fourth Amendment claims, the Complaint also asserts causes of action for "deliberate indifference" pursuant to the Fourteenth Amendment. Any claims pursuant to the Fourteenth Amendment are barred because the Supreme Court has explicitly instructed that claims that a law enforcement officer has used excessive force in the course of making an arrest must be analyzed under the Fourth Amendment's objective reasonableness standard rather than the more generalized notion of due process under the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). Therefore, there is simply no Fourteenth Amendment claim implicated in the present circumstances.

To the extent the Fourteenth Amendment causes of action in the Complaint could be read to assert any supervisory liability or municipal liability, such claims would fail because there has been no predicate constitutional violation by Defendant Owens as discussed above and as previously discussed in the Initial Motion and Report. *See Chalmers, supra*, at 654 (noting that "supervisors and municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages."). Moreover, Plaintiff has no proper party against which to assert a municipal

6

liability claim because the County has no involvement in the Sheriff's law enforcement operations and because Defendant Hunt is a state rather than municipal official. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (noting that the holding in *Monell* creating municipal liability is limited to local government units that are not considered part of the state).

In any event, Plaintiff has not adduced any evidence of an unconstitutional policy or custom that proximately caused a predicate constitutional violation. The law governing municipal liability claims provides that local governments may be held liable for policies and customs that deprive persons of their constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). However, in *Monell*, the United States Supreme Court clearly held that local governments cannot be held vicariously liable under 42 U.S.C. § 1983 for the acts of their employees. Instead, liability rests only when the execution of a municipal policy or custom inflicts the injury. *Id*. Plaintiff has not adduced any evidence that Page's death (which itself must be a constitutional violation) was caused by an unconstitutional policy or custom.

In sum, there is no Fourteenth Amendment claim arising from the force used during an arrest. Moreover, there is no proper party in this case against which such a claim may properly be brought. Lastly, there is no evidence of a predicate constitutional violation or that such violation was actually caused by an unconstitutional policy or custom. Therefore, summary judgment should be granted in favor of Defendants for any Fourteenth Amendment claims.

### III.  NEGLIGENCE CLAIMS

In addition to federal claims, the Complaint also asserts negligence claims arising out of the same events. Defendants[2] again submit that the discussion in the Initial Motion (ECF Nos. 24 & 36) and the Report (ECF No. 39) conclusively establish that Defendant Owens

---

[2] As mentioned above, the only proper party for any state law claims is Defendant Hunt in his official capacity.

acted in an objectively reasonable manner because a reasonable officer in his position would have had probable cause to believe that Page posed a threat of serious physical harm, either to the officer or to others, and he was therefore justified in using deadly force.

A conclusion that an officer acted in an objectively reasonable manner during a particular encounter is necessarily inconsistent with an argument that the same officer's conduct fell below the standard of care applicable to a negligence claim—that of a reasonable person. Liability of a governmental entity under the South Carolina Tort Claims Act is premised on traditional tort concepts including the "reasonable person standard." *See* S.C. Code Ann. § 15-78-20(a) ("liability for acts or omissions under this chapter is based on the traditional tort concepts of duty and *the reasonably prudent person's standard of care* in the performance of that duty") (Emphasis added). The "reasonable person" standard and the "objective reasonableness" standard are the same. *See State v. Mattison*, 575 S.E.2d 852, 856 (S.C. Ct. App. 2003) (equating "objective reasonableness" to what a "reasonable person" would know, understand, or do).

Other courts have recognized that a finding of objective reasonableness also disposes of a claim for negligence. *See Sigman v. Town of Chapel Hill*, 161 F.3d 782, 789 (4th Cir. 1998) (concluding that where police officers were entitled to qualified immunity with respect to alleged Fourth Amendment violations because their use of force was objectively reasonable, the officers' conduct could not be found to be negligent or otherwise wrongful for purposes of a state wrongful death action); *City of Anderson v. Davis*, 743 N.E.2d 359, 366 (Ind. App. Ct. 2001) (concluding that a federal court's grant of summary judgment against a plaintiff in his civil rights claim alleging use of excessive force had collateral estoppel effect in the plaintiff's state court claim for negligence, precluding the plaintiff from arguing that the city was not entitled to immunity under the Indiana Tort Claims Act because it had used excessive force); *Estate of Fennell v.*

*Stephenson*, 137 N.C. App. 430, 528 S.E.2d 911, 916-17 (2000), *rev'd on other grounds*, 354 N.C. 327, 554 S.E.2d 629 (2001) (concluding that estate's state law wrongful death claim was barred by the collateral estoppel effect of the federal court's summary judgment ruling that the police officer, who shot and killed plaintiff's decedent, was entitled to qualified immunity on claim of Fourth Amendment violation because the issue was the same: whether the officer's use of deadly force was objectively reasonable under the circumstances).

However, even if the recommendations in the Report (if adopted) were not dispositive of the negligence causes of action, such claims would still fail based on the immunities provided by the South Carolina Tort Claims Act. The Tort Claims Act provides immunity for any loss resulting from "the method of providing police . . . protection." S.C. Code Ann. § 15-78-60(6). The South Carolina court of appeals has held that this provision of the Tort Claims Act provides immunity for police relating to the manner in which force is used against a subject. *See Huggins v. Metts*, 640 S.E.2d 465, 467 (S.C. Ct. App. 2006) (holding this subsection "specifically exempts the Police from liability concerning the methods which they choose to utilize to provide police protection" in the context of the use of deadly force by police).

Likewise, to the extent the negligence claims are premised on a failure to adhere to or adopt any policy, Defendants are entitled to immunity. Section 15-78-60(4) of the Tort Claims Act provides that a governmental entity is not liable for a loss resulting from the "adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies." The Court in *Adkins v. Varn*, 439 S.E.2d 822, 824 (S.C. 1993), found that the provisions of § 15-78-60(4) are clear and unambiguous on their face, and are not subject to judicial interpretation. A governmental entity cannot be liable and is immune

9

from suit for any loss as a result of the alleged non-enforcement or failure to adopt a policy. As a result, Defendants are immune from suit for any claim for negligence or gross negligence related to the alleged failure to have or adhere to appropriate policies and procedures.

## CONCLUSION

For the reasons set forth above, in addition to those discussed in the Initial Motion and the Report, the Defendants are entitled to summary judgment as to all claims asserted against them.

Respectfully submitted,

*s/ Steven R. Spreeuwers*
Robert D. Garfield, Fed. ID 7799
Steven R. Spreeuwers, Fed. ID 11766
CROWE LAFAVE GARFIELD & BAGLEY, LLC
2019 Park Street
Columbia, South Carolina 29201
803.999.1225
robert@crowelafave.com
steve@crowelafave.com

*Counsel for Aiken County, Aiken County Sheriff's Office, Michael E. Hunt, Christopher Owens, and Clay Killian*

Columbia, South Carolina

August 7, 2024