

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| DONNA MOYLE PAGE, *individually and as personal representative of the Estate of Arthur Curtis Page, II*, § § § § § § Plaintiff, § vs. § § AIKEN COUNTY; AIKEN COUNTY § SHERIFF'S OFFICE; MICHAEL E. HUNT, § *individually and in his official capacity as Aiken County Sheriff*; CHRISTOPHER § OWENS, *individually and in his official capacity as Deputy of Aiken County Sheriff's Office/Aiken County*; CLAY KILLIAN, § *individually and in his official capacity as County Administrator for Aiken County*, and § JOHN DOES, § Defendants. § | Civil Action No. 1:23-4757-MGL |

**ORDER ADOPTING THE REPORTS AND RECOMMENDATIONS,
GRANTING DEFENDANT OWENS'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SECTION 1983 CLAIMS,
DISMISSING WITH PREJUDICE PLAINTIFF'S SECTION 1983 CLAIMS
AGAINST DEFENDANTS JOHN DOES,
REMANDING PLAINTIFF'S STATE CLAIMS
TO THE AIKEN COUNTY COURT OF COMMON PLEAS,
AND DEEMING AS MOOT PLAINTIFF'S MOTION TO EXCLUDE**

### I.     INTRODUCTION

Plaintiff Donna Moyle Page (Page), individually and as personal representative of the Estate of Arthur Curtis Page, II (Decedent), filed this civil action in the Aiken County Court of Common Pleas against Defendants Aiken County; Aiken County Sheriff's Office (ACSO);

Michael E. Hunt, individually and in his official capacity as Aiken County Sheriff; Christopher Owens (Owens), individually and in his official capacity as Deputy of Aiken County Sheriff's Office/Aiken County; Clay Killian, individually and in his official capacity as County Administrator for Aiken County; and John Does (collectively, Defendants). She alleges violations of Decedent's Fourth Amendment and substantive due process rights under 42 U.S.C. § 1983 (Section 1983) and negligence under state law. Defendants removed the case to this Court, which has jurisdiction as per 28 U.S.C. §§ 1331 and 1367.

This matter is before the Court for review of the Report and Recommendation (Report I) of the Magistrate Judge recommending the Court grant Owens's motion for summary judgment as to Page's Section 1983 claims against him. Also before the Court is the Magistrate Judge's Report and Recommendation (Report II) suggesting the Court grant Defendants' motion for summary judgment as to Page's Section 1983 claims, decline to exercise supplemental jurisdiction over Page's negligence claims, and remand this case to the Aiken County Court of Common Pleas. The Reports were made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

II.     **FACTUAL AND PROCEDURAL HISTORY**

At around 12:43 one morning, ACSO Deputy Owens observed a motorcycle driving with an inoperative taillight and insufficient tag light. Owens attempted to initiate a traffic stop, but the motorcycle, driven by Decedent, led him on an extended pursuit. ACSO Sergeant Joseph Frantz (Frantz), South Carolina Highway Patrol (SCHP) Corporal Jonathan Deas (Deas), and SCHP Trooper Stephen Grove eventually joined the pursuit in their respective patrol cars.

On several occasions during the pursuit, Owens saw Decedent reach for his front waistband. And, at least once, Owens radioed to the other officers, "he keeps reaching toward his waistband with that left hand of his." Page's Response to Owens's Motion for Summary Judgment at Ex. D.

After approximately forty-five minutes, Decedent drove onto a grassy shoulder off the interstate and lost control of his motorcycle. Owens promptly exited his patrol car, ran toward Decedent, and repeatedly instructed him to get on the ground. Dash camera footage from Deas shows Decedent fell onto his back, sat up on his buttocks facing Owens, and pointed his arm at Owens. Because Owens believed Decedent was pointing a small handgun at him, Owens discharged his firearm. Five bullets struck and killed Decedent.

Within seconds of the shooting, Owens radioed, "[S]hots fired, shots fired. He pointed something at me." *Id.* at Ex. A. Immediately thereafter, Frantz, who was closely behind Owens in the pursuit, shined a light on Decedent's body and stated from afar, "He's got something in his hands, I can't tell what it is." *Id.* at Ex. E. Owens responded, "Yeah, he pointed it straight at me." *Id.* at Ex. A. Frantz then radioed, "He's got something in his right hand, I can't tell what it is." *Id.* at Ex. E. And, Frantz repeated to the other officers on scene, "He's got something in his right hand, I can't see." *Id.* Around this time, ACSO Lieutenant Mike Goodwin (Goodwin) arrived on scene.

When the officers approached Decedent's body, they discovered a cell phone in his right hand. Frantz thereafter asked a lieutenant to take Owens away from the area and calm him down. As Owens walked away with the lieutenant, he said, "I'm good, he pointed it right at me." *Id.* at Ex. A. Subsequently, Frantz approached Owens and stated: "You're okay. The whole time, he

was reaching. You could tell that, you were putting it over the radio. He got off, he pointed something at you." *Id.* at Ex. E.

Owens then imitated Decedent by pointing his right hand toward Frantz and said, "He literally was like this when I was coming at him." *Id.* Frantz responded, "You're alright bud, you did good, you did right. You didn't know. He had something shiny, pointing it at you." *Id.*

In the days following the incident, Deas and two other responding officers gave statements to the South Carolina Law Enforcement Division (SLED). Deas averred Decedent "fell and turned towards Deputy Owens and raised what appeared to be a black handgun. Deputy Owens turned and started running back to his patrol vehicle while firing his weapon at the driver . . . ." *Id.* at Ex. K. Similarly, Grove stated, "[Decedent] presented and pointed a black object, which appeared to be a gun, at Deputy Owens. Deputy Owens stopped pursuing the [Decedent], turned to his left, and began to run away as he engaged the [Decedent] with his sidearm." *Id.* at Ex. L.

And, Goodwin explained, when he arrived on scene after the shooting, "Deputies and Troopers were holding a position behind cover due to the subject grasping what appeared to me to be a pistol in his right hand. . . . [W]e approached the subject on the ground to find a cell phone he was grasping in his right hand in a pistol gripped fashion." *Id.* at Ex. G.

Owens also gave a statement to SLED. He explained:

> [Decedent] stumbled to the ground. After landing, [Decedent] turned around as he sat on the ground looking at me. As I watched him, I saw [Decedent] reach into his waistband and pull out a black/silver object, which he pointed directly at me.
>
> Given his behavior from the moments after I activated my Charger's blue light, which included numerous instances of him reaching into his waistband with his left hand while operating his motorcycle with his right hand, I believed [Decedent] had pulled a small handgun from his waistband and was pointing it at me.

Owens's Motion for Summary Judgment at Ex. A. Additionally, Owens conducted a recorded interview with SLED and his attorney, during which he offered handwritten responses to the

4

interviewer's questions. Moreover, in a subsequent deposition, Owens testified he used a flashlight to see Decedent before the shooting. Owens further testified, just before the shooting, Decedent, who was about seven yards away, spun around, sat up on his buttocks, and pointed his hands at Owens with an object in them. Owens testified he believed Decedent was armed.

Page later filed this civil action, asserting both federal and state law claims. Defendants removed the matter to this Court. Owens moved for summary judgment on qualified immunity grounds, and Defendants moved for summary judgment on Page's remaining claims.

The Magistrate Judge filed Report I, recommending the Court grant Owens's motion, on June 3, 2024. Page filed objections on June 17, 2024, and Defendants replied on July 1, 2024.

The Magistrate Judge filed Report II, recommending the Court grant Defendants' motion as to Page's federal claims and remand her state claims, on September 4, 2024. Page and Defendants filed objections on September 16, 2024, and September 18, 2024, respectively. Page replied on September 30, 2024, and Defendants replied on October 2, 2024.

Having been fully briefed on the relevant issues, the Court will now adjudicate the motions for summary judgment.

### III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

5

The Court, however, need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews the Report only for clear error in the absence of specific objections. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record to accept the recommendation'").

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether Owens is entitled to summary judgment on Page's Section 1983 claims*

In Page's first objection to Report I, she avers the Magistrate Judge erred in adopting "as undisputed evidence that . . . [D]ecedent moved his arm towards Owens with something in his hand that could have been a gun . . . ." Page's Objections to Report I at 3 (emphasis omitted). This objection contains three subparts.

First, Page contends the Magistrate Judge erroneously concluded "Decedent reaching into his waistband during the pursuit is evidence that Decedent was armed/holding a gun when he was shot by Owens." *Id.* at 5. Page avers this conclusion conflicts with the following evidence:

> 1) Owens, without hesitation, immediately exited his vehicle and pursued Decedent on foot; 2) Owens found it unnecessary to utilize the strategic concepts of cover, concealment, and reactionary gap objectively reasonable officers use for their safety when they perceive and/or have knowledge of a dangerous situation; 3) Owens drawing his weapon after Decedent was on the ground following the command "to get on the fucking ground" and not immediately upon exiting his vehicle; 4) the claimed act of Decedent reaching into his waistband was actually Decedent reaching and attempting to reattach the motorcycle's saddlebags that were dragging on the ground; and 5) officers being tasked with always performing their job in a manner that avoids unduly jeopardizing their own safety.

6

*Id.* at 5–6 (footnotes omitted).

But, even considering the evidence in the light most favorable to Page—Decedent was on the ground as commanded, could have been moving his arms in surrender, had stopped fleeing, and was unarmed—the Court nevertheless agrees "the undisputed evidence shows [Decedent] made a movement with his arm towards Owens with something in his hand that could have been a gun[.]" Report I at 15. Such undisputed evidence includes body-worn camera footage from Owens and Frantz; dash camera footage from Owens and Deas; SLED statements by Owens, Deas, Grove, and Goodwin; and deposition testimony from Owens. These all indisputably demonstrate Decedent pointed his arm toward Owens, and Owens reasonably believed Decedent posed an immediate threat to his safety.

Second, Page asserts the Magistrate Judge "summarily reject[ed]" evidence indicating Owens's SLED statement was coached and suggesting Deas's and Grove's SLED statements were generated by artificial intelligence. *Id.* at 6.

Regarding Owens, Page contends the footage from his body-worn camera shows officers asking him questions about the shooting within minutes. But, the evidence simply reflects Owens responded "Yes," to, "Did y'all shoot him?" Page's Response to Owens's Motion for Summary Judgment at Ex. A. This fails to constitute coaching.

Page also posits Owens's recorded interview with SLED "establishes that [his] recollection of the shooting had been greatly influenced and shaped by legal counsel regarding various issues, including lighting conditions, [body-worn camera] and dashboard camera videos, and the 'something' [Decedent] had in his hand at the time he was shot being identified as a small handgun." Page's Response to Owens's Motion for Summary Judgment at 12–13 (emphasis omitted)). Again, this is unsupported by the evidence, which merely reflects defense counsel

advised Owens to draft his statement without the inherent bias that would result from reviewing relevant footage. Indeed, defense counsel explained during the interview:

> For the sake of the record, that was a purposeful decision by counsel so that when Deputy Owens presented himself to [SLED] for the interview, what he would be relaying to you was a product of his memory—a product of him and I talking through it. You see the [typed] statement in front of you. I was concerned, and I think it's just human nature, when you see the video or videos plural and you hear audio, it's going to, if not subconsciously, purposefully get its way into the recollections and given the events, given the chronology, I felt it was important that what his perception was throughout the incident and at the critical moment was what [SLED] needed to hear. . . . The position in the [typed statement] is a product of his consultation with counsel.

*Id.* This fails to constitute impermissible coaching, especially given the material consistencies between Owens's statements at the scene, to SLED, and during his deposition.

Regarding Deas and Grove, although Page failed to present any evidence showing Deas's statement was generated by artificial intelligence, she did emphasize Grove testified he used "Grammarly and stuff like that" to draft his statement. Page's Response to Owens's Motion for Summary Judgment at 13. Nevertheless, Grove's deposition testimony indicates he personally wrote the statement and utilized Grammarly—a writing software tool that reviews spelling, grammar, and tone—only for assistance. Even if Grammarly were to have drafted the entire statement, Grove's signature at the bottom of the statement indicates he reviewed, accepted, and adopted the statement as his own.

Third, Page claims the dash camera footage upon which the Magistrate Judge relied "may be readily viewed and interpreted" as showing Decedent raising his arms in surrender while holding an illuminated cell phone. *Id.* at 7. The Court, however, determines it would be wholly unreasonable to interpret the footage in this manner, as it shows Decedent raising one arm and pointing at Owens, rather than raising both hands in a posture of surrender. Owens's Motion for Summary Judgment at Ex. D at 00:00–00:10. And, again, this determination comports with the

body-worn camera footage from Owens and Frantz; the SLED statements by Owens, Deas, Grove, and Goodwin; and deposition testimony from Owens.

For all these reasons, the Court will overrule Page's first objection.

Page next posits the Magistrate Judge erred "in disregarding evidence . . . . Owens violated basic policing standards and office training principles immediately before firing the shots that killed Decedent and during the process of shooting Decedent." Page's Objections to Report I at 15 (emphasis omitted).

The Magistrate Judge concluded "that [Owens] may have acted inconsistent with his training [immediately before firing the shots] is not dispositive of the issue before the Court." Report I at 17. For support, the Magistrate Judge cited *Gandy v. Robey*, in which the Fourth Circuit advised "[a] police officer's pre-seizure conduct, regardless of whether it was ill-advised or violative of law enforcement protocol, is generally not relevant for purposes of an excessive force claim under the Fourth Amendment which looks only to the moment force is used." 520 Fed. App'x 134, 142 (4th Cir. 2013).

Page, however, contends the case upon which *Gandy* relied, *Greenidge v. Ruffin*, 927 F.2d 789, 791 (4th Cir. 1992), "does not categorically exclude evidence of training/procedure violations for qualified immunity analyses, and Fourth Circuit law permits expert testimony in excessive force claims." Page's Objections to Report I at 16 (citing *Thomas v. Holly*, 533 Fed. App'x 208, 218 (4th Cir. 2013)).

The Court agrees with the Magistrate Judge it is unnecessary to consider whether Owens, prior to firing the shots, failed to comply with standard police procedures under *Graham v. Connor*, 490 U.S. 386 (1989), which governs the reasonableness of an officer's use of force. This, of course, makes sense because, "under section 1983[,] the issue is whether the government official

9

violated the Constitution or federal law, not whether he violated the policies of a state agency." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993); *see Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) ("As we noted in *Greenidge*, *Graham* requires us to focus on the moment force was used; conduct prior to that moment is not relevant in determining whether an officer used reasonable force.").

Nevertheless, Page avers the Court must consider her expert's testimony Owens, in actually firing the shots, violated the South Carolina Criminal Justice Academy's "Cardinal Rule: When confronting a suspect/suspects if there is the slightest doubt, DON'T SHOOT." Page's Objections to Report I at 17 (emphasis omitted). The expert opined the fact Owens's radioed within seconds of the shooting, "[Decedent] pointed something at me[,]" Page's Response to Owens's Motion for Summary Judgment at Ex. A, indicates "Owens had doubt as to what [Decedent] was pointing at him[,]" rendering lethal force inappropriate under the circumstances. *Id.* at Ex. M. The Court is unconvinced.

"Before employing deadly force, police must have sound reason to believe that the suspect poses a serious threat to their safety or the safety of others." *Elliott*, 99 F.3d at 644. But, "officers need not be absolutely sure . . . of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self protection." *Id.* And, "[t]he circumstances under which a police officer could reasonably feel threatened . . . include when a suspect who is . . . mistakenly believed to be armed[] makes some other threatening movement." *Aleman v. City of Charlotte*, 80 F.4th 264, 286 (4th Cir. 2023). That is exactly what happened here.

Owens saw Decedent, who had repeatedly reached into his waistband during a forty-five-minute pursuit, before losing control of his motorcycle on the shoulder of a dark interstate. When

10

Decedent attempted to flee, he fell to the ground, turned toward Owens, and pointed in Owens's direction a shiny object, which Owen and other officers believed to be a gun.  Although the object was later discovered to be a phone, the Court concludes the manner in which Decedent pointed the phone directly at Owens "in a pistol gripped fashion[,]" Page's Response to Owens's Motion for Summary Judgment at Ex. G, gave Owens sound reason to believe Decedent posed a serious threat to his safety.

Therefore, the Court will overrule Page's second objection, as well.

For all these reasons, the Court will adopt Report I and grant Owens's motion for summary judgment.

### B.    *Whether Defendants are entitled to summary judgment on Page's Section 1983 claims*

Both parties raise objections to Report II, in which the Magistrate Judge recommended the Court grant summary judgment on Page's Section 1983 claims and remand her negligence claims to the Aiken County Court of Common Pleas.  The Court will address each objection in turn.

Page argues the Magistrate Judge "improperly weigh[ed] evidence and ignore[d] evidence of a relevant policy or custom that resulted in illegal action for purposes of [Section] 1983 liability and [Page]'s *Monell* [*v. Department of Social Services*, 436 U.S. 658 (1978),] claim."  Page's Objections to Report II at 4.  Page points to ACSO's "Policies and Procedures Internal Affairs and Employee Misconduct Investigations" and "Policies and Procedures Duty to Intervene," contending these documents reflect:

> 1) Defendants' policy and/or custom to not conduct any type of investigation following the use of lethal force by a deputy; 2) Defendants' policy and/or custom to permit officers to turn off or mute body worn cameras and dashboard cameras following the use of [lethal] so that relevant and necessary evidence is not preserved; and 3) Defendant's policy and/or custom to ignore Defendants' policies and permit a deputy who uses lethal force to be coached by other officers and lawyers regarding what to say regarding the shooting.

*Id.* at 5.

Defendants, on the other hand, aver "the mere argument that the Defendants' policies and practices were substandard is insufficient to defeat a summary judgment motion." Defendants' Reply to Page's Objections to Report II at 3. They consider as dispositive Page's inability "to demonstrate, or even explain, that Owens'[s] shooting [Decedent] was somehow casually connected to any purported policy violation." *Id.* (emphasis omitted).

The undisputed evidence demonstrates SLED investigated this particular shooting, and it was SLED's practice to investigate any instances of lethal force involving ACSO. But, Page has failed to allege ACSO's decision to allow such investigations constitutes an unconstitutional policy or custom under *Monell*. *See Monell*, 436 U.S. at 692 (limiting local government liability to instances where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983"). Additionally, Page has neglected to assert ACSO's decision in this specific case caused its employees to violate Decedent's constitutional rights. *See id.* (explaining Section 1983 "plainly imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights" (internal quotation marks omitted)).

Similarly, Page is unable to identify any specific evidence demonstrating Defendants had an unconstitutional policy or custom either "to permit officers to turn off or mute body worn cameras and dashboard cameras following the use of [lethal] so that relevant and necessary evidence is not preserved" or "to ignore Defendants' policies and permit a deputy who uses lethal force to be coached by other officers and lawyers regarding what to say regarding the shooting." Page's Objections to Report II at 5.

Therefore, the Court will overrule Page's objection to Report II.

Turning to Defendants' objection to Report II, they posit the Court should exercise supplemental jurisdiction over Page's negligence claims "[g]iven the claims . . . all arise from the same facts, the lack of novelty in the remaining questions of state law, and considerations of fairness in light of the resources expended by the party in litigating the case[.]"  Defendants' Objections to Report II at 3.  Page, of course, maintains "the factors of convenience, fairness, and comity all weigh in favor of remaining [her] state law claims."  Page's Reply to Defendants' Objections to Report II at 2.

"Generally, when a district court dismisses all federal claims in the early stages of litigation—e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (internal quotation marks omitted) (quoting *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018)).  The Court, however, "enjoy[s] wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  And, in making this determination, the Court should consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, Defendants have failed to convince the Court this is anything but "the usual case in which . . . the balance of factors to be considered under the [supplemental] jurisdiction doctrine . . . point toward declining to exercise jurisdiction over [Page's] remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

Additionally, the Fourth Circuit has suggested the Court can consider additional factors when deciding whether to exercise supplemental jurisdiction. *See Cahill*, 58 F.3d at 110 ("Among

13

the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.").

Thus, the Court has also given weight to Page's choice of forum in deciding whether to exercise supplemental jurisdiction over her state law claims. *See Voda v. Cordis Corp.*, 476 F.3d 887, 904 (Fed. Cir. 2007) (noting that the plaintiff's choice of forum is a factor in considering the exercise of supplemental jurisdiction).

Page filed this case in the Aiken County Court of Common Pleas, her obvious choice of forum for this lawsuit. Therefore, this consideration also tips in favor of the Court refraining from exercising supplemental

The Court will therefore overrule Defendants' objection to Report II, as well.

For all these reasons, the Court will adopt Report II, grant Defendants' motion for summary judgment as to Page's Section 1983 claims, and remand this matter to the Aiken County Court of Common Pleas.

For the reasons set forth in Report II, the Court will also dismiss with prejudice Page's Section 1983 claims against Defendants John Does.

## V.     CONCLUSION

After a thorough review of the Reports and record in this case under the standards set forth above, the Court overrules the parties' objections, adopts the Reports, and incorporates them herein. Therefore, it is the judgment of the Court Owens's motion for summary judgment is **GRANTED**, and Page's Section 1983 claims against Owens are **DISMISSED WITH PREJUDICE**. Defendants' motion for summary judgment is also **GRANTED** as to Page's

14

Section 1983 claims against them, which are **DISMISSED WITH PREJUDICE**. Page's Section 1983 claims against Defendants John Does are also **DISMISSED WITH PREJUDICE**.

Finally, Page's negligence claims are **REMANDED** to the Aiken County Court of Common Pleas for adjudication there, and Page's motion to exclude the expert testimony of John E. Combs is necessarily **DEEMED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 21st day of March 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE